**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MODULAR SPACE CORPORATION ) | |
| 1200 Swedesford Road ) | |
| Berwyn, Pennsylvania  19312 ) | |
| ) | |
|         Plaintiff, ) | |
| ) | Case No.   1:18-cv-784 |
|    v. ) | |
| ) | |
| FACILITIES DEVELOPMENT CORPORATION ) | |
| 1980 Isaac Newton Square ) | |
| Reston, Virginia  20190 ) | |
| ) | |
| Serve:  David L. Frederick, Resident Agent ) | |
|       1980 Isaac Newton Square ) | |
|       Reston, Virginia  20190 ) | |
| ) | |
|         Defendant. ) | |
| _____ ) | |

**COMPLAINT**

Modular Space Corporation ("ModSpace"), by and through its undersigned counsel, hereby files this Complaint against Facilities Development Corporation ("FDC") and, in support thereof, states as follows:

**PRELIMINARY STATEMENT**

1.      This case concerns FDC's wrongful termination of a Subcontract Agreement between ModSpace and FDC for certain aspects of the construction and installation of a modular temporary office trailer complex for the Department of Homeland Security ("DHS") Chief Readiness Support Officer ("CRSO") and associated staff at the St. Elizabeth's Campus in Washington, DC (the "Project").  ModSpace seek a Declaratory Judgment that the default termination of the Subcontract Agreement was wrongful and therefore should convert to a termination for convenience under the applicable Federal Acquisition Regulations.  ModSpace

also seeks damages for breach of contract and a money judgment against FDC in an amount greater than $715,284.56.

## PARTIES

2.      Plaintiff ModSpace is a Delaware corporation that provides, among other things, design-build construction services on federal, state, and private construction projects to its clients.   ModSpace has offices at 1800 Ruffin Mill Circle, Colonial Heights, Virginia  20190.

3.      Upon information and belief, Defendant FDC is a Virginia corporation with its principal place of business at 1980 Isaac Newton Square, Reston, Virginia  20190.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because (1) the Plaintiff is not a citizen of the same state as the Defendant and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over FDC pursuant to D.C. Code § 13-423 and Federal Rule of Civil Procedure 4(k)(1)(A) because FDC contracted to supply services and otherwise transacted business in the District of Columbia that is the subject to this Complaint.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

7.      FDC, as general contractor, entered into a Construction Contract (the "Prime Contract") with the United States of America, acting by and through the General Services Administration ("GSA" or "Owner"), as owner, for the overall construction of the Project.

8.      In its role as general contractor, FDC entered into a Subcontract Agreement (the "Subcontract") with ModSpace to design, manufacture, and erect the a modular office trailers (the "Units") for the Project.

9.      ModSpace entered into separate purchase orders with several manufacturers, subcontractors, and suppliers to perform its scope of work under the Project.

10.     In exchange for performing the agreed scope of work in accordance with ModSpace's proposal dated September 18, 2017 (the "Scope of Work"), FDC, in the Subcontract, agreed to pay ModSpace a lump sum of $768,983.00, subject to adjustment for additions and modifications to the Scope of Work.

11.     In order for ModSpace to perform its Scope of Work, FDC agreed to provide, among other things, the following as conditions precedent to the placement and erection of the Units:

      a.      Complete geotechnical testing of the Project site in accordance with Project requirements;

      b.      Complete site development drawings, site plan, grading plan, drainage plan, and landscaping plan in accordance with Project requirements;

      c.      Soil compaction providing a minimum bearing capacity of 2,500 PSF along with testing and inspections in accordance with Project requirements; and

      d.      Site clearing, rough grading, and final grading in accordance with Project requirements.

12.     Pursuant to the Subcontract, ModSpace delivered the Units to the Project site for placement and erection.

13.     When the Units were delivered to the Project site, it appeared that FDC had not provided ModSpace with a properly prepared and graded site in accordance with FDC's obligations as set forth in Paragraph 11 above.

14.     ModSpace notified FDC of its concerns regarding the Project site but was directed by FDC to place and erect the Units regardless.

15.     At FDC's direction, ModSpace placed and erected the Units on the existing Project site.

16.     After the Units were placed and during the erection of the Units, the parties observed that the Units experienced abnormal settlement indicative of an inadequately prepared and graded site.

17.     ModSpace again notified FDC of the conditions and its concerns regarding the Project site.

18.     At FDC's direction, ModSpace undertook certain actions in an effort to remediate the Project site conditions, prepare the foundation, and reset the Units.

19.     ModSpace incurred additional time and costs attempting to address FDC's failures to properly prepare and grade the site in accordance with the Project requirements.

20.     In addition to the foregoing, ModSpace incurred additional, compensable costs relating to changes in the Scope of Work for plumbing, drywall, skirting, ramps, and other issues, including delays caused by FDC.

21.     After ModSpace continued to present its concerns regarding the site, FDC provided to ModSpace a letter from an engineering company that purported to confirm the minimum bearing capacity of the Project site.  That letter, however, failed to provide details regarding the testing methodology and lacked sufficient indicia of reliability to ModSpace's

engineer of record.  ModSpace questioned the letter and asked for additional information from FDC that was not provided.  The letter further acknowledged that additional site work was required to be performed.

22.     Despite the actions taken at the direction of FDC and notwithstanding the letter provided by FDC, the Units continued to experience abnormal settlement, and ModSpace was unable to properly and safely erect the Units in accordance with the Scope of Work.

23.     As a result of the foregoing, ModSpace notified FDC that it could not continue work on the Project unless and until a proper geotechnical investigation of the Project site was performed and the engineer confirmed that the Project site was in compliance with Project requirements sufficient for ModSpace to complete its Scope of Work.

24.     ModSpace's engineer of record further notified FDC and GSA that the abnormal settlement of the Units was indicative of the failure to properly prepare and grade the Project site and presented, in his opinion, a serious safety issue to individuals using the facility.

25.     After FDC refused to provide a proper geotechnical report and failed to provide a properly prepared and graded site in accordance with the Project requirements, ModSpace offered, on multiple occasions, to engage -- at its expense -- a third party geotechnical engineer to provide the necessary inspection and testing of the Project site.

26.     FDC dismissed ModSpace's concerns and refused to allow ModSpace to conduct any further investigation or testing of the Project site.

27.     FDC's refusal was entirely unjustified as it would have allowed construction of the Project to continue in a timely and safe manner.

28.     When ModSpace advised FDC that it could not continue performance of the Scope of Work without properly prepared and graded site in accordance with the Project

requirements due to continuing concerns regarding safety and performance of the Units, FDC wrongfully terminated the Subcontract.

29.     Upon information and belief, FDC continues to perform work at the Project, and the Project site conditions are being altered and changed.  ModSpace, therefore, must conduct an immediate inspection and testing of the Project site to preserve evidence in this matter.

30.     ModSpace never repudiated its obligations under the Subcontract and ModSpace repeatedly advised FDC that it was ready, willing, and able to complete its Scope of Work provided that FDC complied with the necessary preconditions to ModSpace's work.

31.     The total value of the work provided by ModSpace pursuant to the Subcontract is $715,284.56.

32.     FDC has not issued any payments to ModSpace and, therefore, ModSpace is owed $715,284.56 for the work it performed under the Subcontract.

33.     ModSpace has satisfied all conditions precedent for filing the Complaint and recovery of the amounts owed.

### COUNT I
### Declaratory Judgment

34.     ModSpace incorporates by reference and re-alleges the allegations of paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.     ModSpace seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 to determine questions in actual controversy between the parties.

36.     There is a real, actual, substantial, and justiciable issue in controversy between the parties regarding FDC's wrongful termination of the Subcontract.

37.     A judicial determination and a declaration of rights and obligations of the parties is necessary and appropriate because ModSpace has no adequate remedy at law which will resolve the current controversy.

WHEREFORE, ModSpace respectfully requests that this Court declare the following:

a.      That FDC failed to properly prepare and grade the Project site in accordance with the Project requirements.

b.      That FDC's failure to properly prepare and grade the Project site in accordance with the Project requirements excused ModSpace from further performance under the Subcontract.

c.      That FDC wrongfully terminated the Subcontract.

d.      That FDC's wrongful termination of the Subcontract converts into a termination for convenience under the applicable Federal Acquisition Regulations.

e.      That ModSpace is entitled to a judgment against FDC in accordance with the termination for convenience provisions of the Federal Acquisition Regulations.

f.      That ModSpace is entitled to pre-judgment and post-judgment interest from FDC.

g.      That ModSpace is entitled to the legal fees and costs incurred in pursuing the claim and this proceeding, and as otherwise permitted by law.

h.      For such other relief that this Court deems just, proper and equitable.

## COUNT II
### Breach of Contract

38.     ModSpace incorporates by reference and re-alleges the allegations of paragraphs 1 through 33, inclusive, as though fully set forth herein.

39.     FDC failed to perform its contractual obligations under the Subcontract to properly prepare and grade the Project site in accordance with the Project requirements.

40.     FDC failed to perform its contractual obligations under the Subcontract to pay ModSpace for the work performed.

41.     FDC breached its contractual obligations by wrongfully terminating the Subcontract and failing to pay ModSpace for the work it performed.

42.     FDC's actions and conduct constitute a material breach of the Subcontract.

43.     As a direct and proximate result of FDC's material breach of the Subcontract, ModSpace has suffered damages in an amount to be proven at trial, but no less than $715,284.56, plus all costs, interests, attorneys' fees and other damages.

WHEREFORE, ModSpace requests that it be awarded a judgment under Count II against FDC thereby entitling ModSpace to recover damages in an amount in excess of $715,284.56, plus interest, costs, and attorneys' fees.

## COUNT III
### *Quantum Meruit*

44.     ModSpace incorporates by reference and re-alleges the allegations of paragraphs 1 through 33, inclusive, as though fully set forth herein.

45.     ModSpace rendered valuable labor, materials, and equipment totaling in excess of $700,000.00 necessary for the completion of the Project and necessary for FDC to satisfy its obligations to GSA under the Prime Contract.

46.     FDC accepted and received the benefit of the labor, materials, and equipment and did so knowing that ModSpace expected to be paid for those materials and services.

47.     All materials and services rendered by ModSpace were rendered under such circumstances that FDC knew that ModSpace expected to be paid.

48.     The reasonable value of the work performed by ModSpace for which FDC has failed to pay ModSpace is in excess of $700,000.00.

WHEREFORE, ModSpace requests that it be awarded a judgment under Count III against FDC thereby entitling ModSpace to recover damages in an amount in excess of $700,000.00, plus interest, costs, and attorneys' fees.

## COUNT IV
### Unjust Enrichment

49.     ModSpace incorporates by reference and re-alleges the allegations of paragraphs 1 through 33, inclusive, as though fully set forth herein.

50.     ModSpace conferred a benefit upon FDC by performing work necessary for the completion of the Project and necessary for FDC to satisfy its obligations to GSA under the Prime Contract.

51.     FDC was aware of, and had knowledge of, the benefit conferred upon it by ModSpace.

52.     FDC has accepted and retained the value of the benefits conferred upon it by ModSpace without paying ModSpace for those benefits, rendering it inequitable for FDC to retain the benefits provided by ModSpace.

53.     The reasonable value of the benefit received by FDC for which FDC has been unjustly enriched exceeds $700,000.00.

54.     WHEREFORE, ModSpace requests that it be awarded a judgment under Count

IV against FDC thereby entitling ModSpace to recover damages in an amount in excess of

$700,000.00, plus interest, costs, and attorneys' fees.

Respectfully submitted,


 */s/ Michael A. Schollaert*
Michael A. Schollaert (Bar No. MD0054)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
100 Light Street, 19th Floor
Baltimore, MD  21202
Phone:  410-685-1120
mschollaert@bakerdonelson.com

Elizabeth J. Cappiello (Bar No. 1018161)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
901 K Street NW
Washington, D.C. 20001
Phone:  202-326-5026
ecappiello@bakerdonelson.com

*Attorneys for Modular Space Corporation*